# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RBS CITIZENS, N.A.,

    Plaintiff/Counter-Defendant,

    v.

MUMTAZ HUSAIN, MURAD HUSAIN,
HOMEWOOD DONUTS, INC. d/b/a
DUNKIN DONUTS, CALUMET
FOODS, INC., OAKLAWN INC., 183
DONUTS, INC., SOUTH HOLLAND
DONUTS, INC., SOUTH HOLLAND
MANAGEMENT & PROPERTY, LLC,
4M PROPERTIES & MANAGEMENT,
INC., and MEHENDL PANJWANI

    Defendants/Counter-Plaintiffs.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 09 C 4956

Judge Ruben Castillo

## MEMORANDUM OPINION AND ORDER

RBS Citizens, N.A. ("RBS") brings this diversity action against Mumtaz Husain, Murad

Husain, Homewood Donuts, Inc. doing business as Dunkin Donuts ("Homewood"), Calumet

Foods, Inc. ("Calumet"), Oaklawn Inc. ("Oaklawn"), 183 Donuts, Inc. ("183 Donuts"), South

Holland Donuts, Inc. ("South Holland Donuts"), South Holland Management & Property, LLC

("South Holland Management"), 4M Properties & Management, Inc. ("4M"), and Mehendl

Panjwani (collectively "Defendants") alleging breaches of guaranty, breaches of contract, and

replevin. (R. 1, Compl.) Defendants[1] assert counter claims of breach of contract, common law

and statutory fraud, violation of the Bank Holding Company Act, 12 U.S.C. § 1972 *et seq.*, and

violation of the Illinois Interest Act, 815 Ill. Comp. Stat. 205/1 *et seq.*, (R. 90, Am. Countercls.),

---

[1] The Court has entered a default against Mumtaz Husain, Murad Husain, and Homewood for
failure to timely answer or otherwise plead. (R. 12, Min. Entry; R. 56, Min. Entry.) The Husains
and Homewood join the undisputed defendants in asserting these counterclaims.

as well as various affirmative defenses, (R. 91, Am. Affirmative Defenses). While the procedural history of this case is long and complex, it need not be recited in full here. The claims are centered around a series of loan and guaranty agreements ("the Loans") between RBS and Defendants financing several Dunkin Donuts franchises. (R. 1, Compl. ¶ 14.) The specific issues presently before the Court are evidentiary in nature. The Court now addresses RBS's motion to exclude the testimony of Amjad Kadwani (R. 175) and Defendants' motion to compel the production of documents withheld or redacted under claims of privilege or irrelevance (R. 169). For the reasons set forth below, RBS's motion (R. 175) is GRANTED and Defendants' motion (R. 169) is GRANTED IN PART and DENIED IN PART.

## DISCUSSION

### I.   RBS's motion to exclude Kadwani's testimony

RBS filed its complaint on August 12, 2009. (R. 1, Compl.) After heavy motion practice, including certain discovery stays, the Court notified the parties on December 1, 2011 that they were granted leave to proceed with all discovery. (R. 117, Min. Entry.) The Court set September 30, 2012 as the discovery cut-off date. (R. 145, Min. Entry.) Subsequently, the Court granted Defendants' motion to extend the discovery deadline to October 12, 2012, (R. 159, Min. Entry), then granted Defendants' further motion to extend discovery until November 9, 2012, (R. 165, Min. Entry). Defendants served RBS with supplemental interrogatory answers that named Kadwani, the Husains' accountant, as someone with knowledge of Defendants' finances and a potential trial witness for the first time on November 7, 2012, two days before the extended close of discovery. (R. 175, Pl.'s Mot. ¶¶ 5-6; R. 175-1, Ex. A, Defs.' Second Supp. Answers to Pl.'s Second Interrogs.)

RBS moves to exclude Kadwani's testimony on the basis that Defendants failed to identify him in response to RBS's interrogatories and affirmatively denied that they consulted an accountant with regards to the loans at issue here. (R. 175, Pl.'s Mot. ¶ 5.) RBS contends that even if, as Defendants claim, Kadwani's name appeared in the documents they produced, it had no reason to seek to depose Kadwani given Defendants' denial that they relied on an accountant. (*Id.* ¶ 8.)

Defendants argue that although they did not formally disclose Kadwani prior to November 7, 2012, RBS "was or should have been aware of" him because he set up the corporations that owned the franchises at issue, worked with RBS to provide financial information about the franchises, and participated in at least one settlement conference between RBS and the Husains. (R. 179, Defs.' Resp. at 4.) Defendants additionally contend that their supplemental response in which they disclosed Kadwani was timely because they disclosed him as soon as counsel realized that his knowledge about the financial performance of the franchises may be relevant. (*Id.*) Defendants contend that they did not disclose Kadwani previously because "he did not have a direct role in the negotiation of the loan agreements," but that "[a]s the case progressed," defense counsel came to realize that Kadwani's "knowledge about the financial performance of the franchises may be relevant given that [RBS] initially declared a default based on the violation of the financial covenants, not non-payment." (*Id.* at 4-5.) Defendants argue that the timing of the disclosure is harmless because RBS still has plenty of time to depose Kadwani before trial. (*Id.* at 5.) Finally, Defendants argue that RBS itself scheduled depositions for after the discovery cut-off date, so it cannot object to deposing Kadwani after discovery has formally ended. (*Id.* at 5-6.)

The Federal Rules of Civil Procedure require each party to disclose "each individual likely to have discoverable information," Fed. R. Civ. P. 26(a)(1)(A), and to supplement those disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," Fed. R. Civ. P. 26(e)(1)(A). If a party fails to comply with the disclosure requirements set out in Rule 26, the information or witness it failed to disclose is automatically excluded "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) (citing *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)).

First, the Court finds that Defendants' disclosure of Kadwani two days before the discovery cut-off date, which had already been extended twice, was clearly untimely. Local Rule 16.1 provides: "Except to the extent specified by the court on motion of either party, discovery must be completed before the discovery closing date. Discovery requested before the discovery closing date, but not scheduled for completion before the discovery closing date, does not comply with this order." Defendants could not reasonably expect that disclosing Kadwani two days before the discovery closing date gave RBS a fair opportunity to depose him before the end of discovery. Accordingly, Kadwani is automatically excluded unless Defendants' failure to disclose him earlier was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1).

Defendants do not attempt to argue that their untimely disclosure is justified, only that it is harmless because there is still time to depose Kadwani and they "have no objection" to producing Kadwani for a deposition after the close of discovery. (R. 179, Defs.' Resp. at 5.) RBS argues that Kadwani's belated disclosure is not harmless because the disclosure of Kadwani

for the first time two days prior to discovery cutoff did not allow it any meaningful opportunity to pursue discovery as to him. (R. 181, Pl.'s Reply ¶ 5.) RBS contends that allowing Kadwani to testify "would result in extreme prejudice to RBS" because it conducted discovery in reliance on Defendants' sworn representations that they did not consult an accountant in connections with the loans. (*Id.*)

Defendants assert that Kadwani has worked as the Husains' accountant since 1994, and during that time he "compiled financial statements, completed tax returns, and submitted regular reports" regarding the performance of the Husains' franchises. (R. 179, Defs.' Resp. at 3-4.) In light of this, Defendants are not able to explain away their assertion in response to RBS's second set of interrogatories that "Defendants did not consult financial advisors, accountants, or attorneys in connection to the matters at issue in this case." (R. 175-3, Ex. C, Defs.' Answers to Pl.'s Second Interrogs. ¶ 4.) Defendants instead argue that RBS should have known about Kadwani's role in the Husains' business dealings and that their failure to disclose him is thereby excused. Defendants' argument essentially implies that RBS should not have relied on Defendants' statement that they did not consult with an accountant and that RBS should have deposed Kadwani after his inclusion in two e-mail chains. (R. 179, Defs.' Resp. at 4.) Yet Defendants contend that their own counsel did not fully understand Kadwani's importance until three years into this litigation. (*Id.* at 4-5.) This Court declines to require RBS to be more capable of determining which of Defendants' employees and consultants have relevant knowledge than Defendants themselves or to discern whether Defendants' answers to interrogatories are true or not.

"Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery." *Finwall v. City of Chi.*, 239 F.R.D. 494, 501 (N.D. Ill. 2006). It is

not Defendants' prerogative to determine whether or not discovery may be reopened; it is this Court's. *Id* at 500-01; *see Reales v. Consol. Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996). Defendants' argument that they can disregard the Court's stated discovery cut-off because they are willing to produce their witness for a deposition after the discovery period "essentially restructures the Federal Rules of Civil Procedure and makes discovery deadlines set by the court irrelevant." *Finwall*, 239 F.R.D. at 500; *accord WDT Wireless Commc'ns, Inc. v. Dolins, Dolins & Sorinsky, LTD.*, No. 09-CV-622, 2010 WL 4168429, at *4 (N.D. Ill. Oct. 13, 2010) (rejecting plaintiff's argument that untimely disclosure was harmless because it offered to make the witness available and because plaintiff made it known in a deposition that it would produce an expert witness); *Aon Risk Servs., Inc. of Ill. v. Shetzer*, No. 01 C 7813, 2002 WL 1989466, at *6 (N.D. Ill. Aug. 27, 2002) (rejecting argument that post-discovery production of documents was harmless because opposing party had time to take depositions before trial). Here, Defendants' failure to disclose Kadwani as an individual likely to have discoverable information as required by Rule 26(a) and their false assertion that they did not consult an accountant in relation to the Loans were not harmless because these errors allowed RBS to conduct discovery under the misconception that no accountant had discoverable knowledge about the Loans. Had RBS known of the involvement of an accountant, it might well have conducted its depositions differently. Accordingly, exclusion of Kadwani's testimony is appropriate under Rule 37(c). *See Salgado*, 150 F.3d at 742; *Davis Cos., Inc. v. Emerald Casino, Inc.*, No. 99 C 6822, 2000 WL 33956686, at *1-*3 (N.D. Ill. June 6, 2000) (rejecting "eleventh hour attempt" to depose witness and finding "no reason why this facet of discovery could not have been initiated long ago rather than on the eve of discovery cutoff when it will likely entail an extension of discovery"). The Court thus GRANTS RBS's motion to exclude the testimony of Amjad Kadwani (R. 175).

## II.    Defendants' motion to compel

On October 15, 2012, Defendants moved to compel RBS to produce certain withheld and redacted documents and a privilege and redaction log that satisfies Rule 26(b)(5).  (R. 169, Defs.' Mot. Compel.)  Defendants argue that RBS improperly withheld and redacted certain documents based on relevance and improperly withheld certain documents as privileged.  (*Id.* ¶¶ 1-5.)  Defendants argue that RBS withheld information pertaining to other Dunkin Donuts franchisees that should be produced because it is relevant to their affirmative defenses and counterclaims.  (*Id.* ¶ 6.)  Specifically, Defendants contend that "the documents may establish that RBS executed a common scheme to defraud additional Dunkin Donuts franchisees or, alternatively, that Defendants were treated unlike other Dunkin Donuts franchisees and that they are victims of a particularized fraudulent scheme."  (*Id.* ¶ 8.)

Defendants contend that RBS bears the burden of proving why redaction is appropriate, and Defendants disagree with RBS's judgment as to whether documents are responsive or not.  (*Id.* ¶¶ 7-8.)  Defendants contend that the redactions make it difficult for them to discern the meaning of redacted documents and request that the Court compel production of complete and unredacted documents.  (*Id.* ¶ 9.)  Defendants also argue that RBS's privilege log is inadequate because it does not sufficiently describe the basis for RBS's claim of privilege or indicate the author or purpose of many documents.  (*Id.* ¶¶ 12, 15.)  Defendants contend that RBS has applied the attorney-client and work product privileges too broadly in order to withhold documents they should have produced.  (*Id.* ¶¶ 17-20.)  Defendants request that the Court compel RBS to produce responsive documents that are not protected by attorney-client privilege or the work-product doctrine.  (*Id.* ¶ 23.)  Defendants also seek costs and attorneys' fees for the filing of their motion to compel pursuant to Local Rule 37.2.  (*Id.* ¶¶ 24-26.)

RBS argues that the documents that are the subject of Defendants' motion "fall into one of three categories:" (1) spreadsheets and reports that are non-responsive because they relate exclusively to other borrowers; (2) spreadsheets and reports that contain responsive information as well as non-responsive information relating to other borrowers; and (3) spreadsheets and reports that are responsive but privileged pursuant to the attorney-client privilege or the work product doctrine and also contain non-responsive information regarding other borrowers. (R. 172, Pl.'s Mem. ¶ 1.) RBS contends that documents in all of these categories are appropriately withheld. (*Id.*) RBS also argues that Defendants' motion requests documents that Defendants have not previously requested in discovery and that are not responsive to any of their document requests. (*Id.* ¶¶ 2, 8.)

After a motion hearing on October 17, 2012, this Court directed RBS to submit the unredacted documents to chambers for an *in camera* review. (R. 171, Min. Entry.) RBS complied and also produced an amended privilege log, highlighting the entries Defendants contest, to Defendants and the Court. (R. 172, Pl.'s Mem. ¶ 4; R. 172-3, Ex. C, Pl.'s Am. Priv. Log.) Defendants attach to their motion e-mails to RBS's counsel identifying the redacted and withheld documents they take issue with. (R. 169-1, Ex. A, Sep. 26, 2012 E-mail; R. 169-5, Ex. E, Oct. 3, 2012 E-mail.) The Court confines its *in camera* review to these contested documents.

## A. Legal standards

### 1. Attorney-client privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege prohibits the compelled disclosure of "confidential communications between a client and an attorney for the purpose of obtaining legal advice."

*Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000). Not all communications between the attorney and the client are privileged; "the privilege is in derogation of the search for the truth and, therefore, must be strictly confined." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). The privilege adheres "only if [the communications] constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990). The attorney-client privilege only shields communications that were intended to be confidential, so communications made to an attorney in the presence of a third party or made with the intent that they will be disclosed to a third party are not privileged. *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

The Seventh Circuit has articulated the following test for determining whether the attorney-client privilege attaches to a communication:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Evans*, 113 F.3d at 1461 (quoting 8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2292 (1961)). "The party seeking to invoke the privilege bears the burden of proving all of its essential elements," *id.*, and "each of these elements must be established as to each document, as the mere existence of an attorney-client relationship is not sufficient to cloak all communications with the privilege." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992).

The attorney-client privilege has long been understood to protect corporate clients and counsel. *Upjohn*, 449 U.S. at 389. However, the privilege is limited to situations in which the

attorney is acting as a legal advisor—business and financial advice are not protected. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). "Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged." *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987); *see also United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999) (holding that "a dual-purpose document— a document prepared for use in preparing tax returns and for use in litigation—is not privileged."). The "expanded role of legal counsel within corporations" has blurred the line between business and legal advice. *Acosta v. Target Corp.*, 281 F.R.D. 314, 322 (N.D. Ill. 2012). A prudent corporation will seek legal advice with respect to most corporate decisions, but the inclusion of general counsel does not transform all business discussions into privileged attorney-client communications. *Upjohn*, 449 U.S. at 393. The increasing inclusion of attorneys in business discussions and decisions has "increased the burden that must be borne by the proponent of corporate privilege claims relative to in-house counsel. The burden of persuasion on all elements of claims [of] privileges is exclusively the proponent's." *Acosta*, 281 F.R.D. at 322 (quoting *In re Vioxx Products Liab. Litig.*, 501 F. Supp. 2d 789, 799 (E.D. La. 2007)).

## 2. Work product doctrine

The work product doctrine is broader than the attorney-client privilege and protects from discovery "documents and tangible things that are prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A); *United States v. Nobles*, 422 U.S. 225, 238, (1975). The work product doctrine shields "material prepared by agents for the attorney as well as those prepared by the attorney himself." *Nobles*, 422 U.S. at 238-39. This protection does not apply if the prospect of future litigation was remote at the time the document was created. *Binks Mfg. Co. v. Nat'l*

*Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). "The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney . . . the privilege is not that broad." *Id.* Instead, the work product doctrine applies only when there was "an identifiable prospect of litigation because of specific claims that have arisen." *Baxter Travenol Labs.*, 1987 WL 12919, at *10. To identify work product, courts are directed to determine "whether in light of the factual context the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996) (quoting *Binks*, 709 F.2d at 1119) (internal quotation marks omitted).

Materials created in the ordinary course of business which may have the incidental effect of being helpful in litigation are not privileged under the work product doctrine. Fed. R. Civ. P. 26(b)(3) (1970 Committee Notes); *Heriot v. Byrne*, 257 F.R.D. 645, 663 (N.D. Ill. 2009) (citing *Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 564 (N.D. Ill. 2007)). As with the attorney-client privilege, documents that are not primarily legal in nature are not privileged under the work product doctrine. *See Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981) ("Only where the document is primarily concerned with legal assistance does it come within [attorney-client or work product] privileges."). "The threshold determination in a case involving a claim of work product privilege is whether the material sought to be protected from discovery was prepared in anticipation of litigation. The determination of whether materials are prepared in anticipation of litigation, however, while central to the work product doctrine, eludes precision." *Allendale Mut. Ins.*, 145 F.R.D. at 86 (citing *Binks*, 709 F.2d at 1118) (internal citation omitted). Especially difficult is a field like real estate loans, in which appraisals and risk analyses are undertaken both as a routine course of business and in preparation for specific

litigation. *See id.* ("This is especially the case in the insurance context, where insurers routinely perform investigations and accumulate files even when no litigation ensues.").

### 3. Privilege logs

Rule 26(b) requires that a party who withholds otherwise discoverable information must "describe the nature of the documents, communications, or things not produced or disclosed— and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). This is generally done through a privilege log. Courts in this district have required that a privilege log identify "for *each* separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged." *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006) (citing *Allendale*, 145 F.R.D. at 88); *see also Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010) (citing *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003); Fed. R. Civ. P. 26(b)(5)(A)); *Naik v. Boehringer-Ingelheim Pharms., Inc.*, No. 07C3500, 2008 WL 4866015, at *3 (N.D. Ill. June 19, 2008). "This information must be sufficiently detailed to allow the court to determine whether the party asserting the privilege has discharged its burden of establishing the applicability of the privilege." *Id.* When claims of privilege are contested, they must be resolved on a document-by-document basis. *Am. Nat'l Bank & Trust Co. of Chi. v. Equitable Life Assurance Soc'y of the U.S.*, 406 F.3d 867, 879-80 (7th Cir. 2005) (holding that a court must review all of the documents claimed as privileged and cannot rely on a "random sampling" of documents to determine privilege). The Court's privilege determinations are reviewed under the clearly erroneous standard. *Rehling v. City of Chi.*, 207 F.3d 1009, 1019 (7th Cir. 2000).

**B.     RBS's claims of privilege and work product doctrine**

Defendants dispute RBS's assertion of attorney-client and work product privilege over

676 documents included in RBS's privilege log. (R. 169, Defs.' Mot. ¶¶ 20-22; R. 172-3, Ex. C,

Pl.'s Am. Priv. Log.) Of these, RBS produced 72 after Defendants filed their motion. Another

91 were determined to be non-responsive to Defendants' interrogatories and document requests

although originally included on RBS's privilege log. The Court reviewed each of the remaining

513 documents, which RBS asserts are protected by the attorney-client privilege, the work

product doctrine, or both.

As an initial matter, Defendants argue that RBS's privilege log does not sufficiently

describe the basis for the claims of privilege or enable Defendants to assess the claims pursuant

to Rule 26(b)(5). (*Id.* ¶ 12.) Specifically, Defendants take issue with the log's failure to identify

the creators of many of the documents and their intended use. (*Id.* ¶ 15.) The Court agrees with

Defendants that RBS's privilege log is inadequate to uphold their claims of privilege. RBS's

privilege description for hundreds of documents is simply: "Document containing non-

responsive and privileged analysis re loan facilities including NBB based in part on and

reflecting advice of counsel." (R. 172-3, Ex. C, Pl.'s Am. Priv. Log.) This vague and generic

description does not allow the Court or Defendants to assess RBS's claim of privilege as

required by Rule 26(b)(5). Additionally, RBS fails to identify the author or recipient, if any, for

a majority of the documents listed on its privilege log. This oversight significantly limits the

Court's ability to find that documents are protected under the attorney-client privilege.

Similarly, RBS's privilege log fails to include all the recipients of some e-mail chains. "If listing

only the recipients of the last e-mail in a chain fails to disclose everyone to whom an allegedly

privilege communication has been sent, the listing cannot be adequate." *Acosta*, 281 F.R.D. at

320. When the privilege log does identify the authors and recipients of documents and e-mails, it fails to indicate the positions of the authors and recipients of the disputed e-mails. For example, RBS's privilege log provides that the author of document 41 is "RBS" and provides that the recipient is "N/A," yet RBS claims attorney-client privilege. The description gives no indication that it was created by or for an attorney or that it was ever intended to be or was kept confidential. *See Acosta*, 281 F.R.D. at 323-24 (rejecting corporate defendant's claim of privilege when it "failed to show that the distribution of the spreadsheets was limited in any way. [Defendant] lists the author of the spreadsheets as 'unknown' and the recipients as 'N/A,' presumably meaning that [defendant] has no idea who authored or received them.").

The lack of information in RBS's privilege log means that the Court has had to make its privilege determinations based almost exclusively on examinations of the documents themselves. *See, e.g., Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 375 (N.D. Ill. 2000) ("The brief, unadorned description does not allow the court to determine whether the evaluations were of the type performed in the regular course of business, or as part of a litigation strategy."). Without any explanation of what the documents are, who authored them, or the purpose for which they were created, the Court determines that the vast majority of the disputed documents—mostly spreadsheets containing financial data—are not in fact privileged.

The Court now turns to an *in camera* document-by-document review to determine the status of each one. *See Equitable Life Assurance Soc'y*, 406 F.3d at 879-80. The Court reiterates that the attorney-client privilege is narrowly applied, *In re Grand Jury Proceedings*, 220 F.3d at 571, and RBS bears the burden of proving that the privilege applies, *Evans*, 113 F.3d at 1461. The Court finds that the deficiencies in RBS's privilege log make it nearly impossible for RBS to uphold its claims of attorney-client privilege. Without a complete list of who received certain

documents, for example, there is no way to know if the communications were kept confidential, and the Court cannot find that the documents are protected by attorney-client privilege. Accordingly, the Court finds that only the following documents are protected by the attorney-client privilege: 1, 86, 392, 409, 548.

With regards to the work product doctrine, the Court must determine at what stage of the ongoing relationship with Defendants did RBS reasonably anticipate litigation, *Logan*, 96 F.3d at 976-77, and which documents would have been prepared even if litigation was never filed or expected, *Allendale Mut. Ins.*, 145 F.R.D. at 86. *See Caremark*, 195 F.R.D. at 617. The Court assumes that sophisticated lenders such as RBS are always, to some extent, anticipating the possibility of foreclosure. *See Binks*, 709 F.2d at 1118 ("Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced.") (quoting 8 Wright & Miller, *Federal Practice and Procedure* § 2024). Thus, the Court must determine when the relationship transformed from a "remote prospect of litigation" to an "articulable claim, *likely* to lead to litigation." *Binks*, 709 F.2d at 1120. RBS alleges that it retained counsel in July 2008 "to evaluate how best to recover its loans to Defendants and resolve its relationship with Defendants," and that at that point, "litigation was anticipated." (R. 172, Pl.'s Mem. ¶ 12.) That Defendants defaulted on their loans in July 2008 is borne out by some of the disputed documents from July 2008, so the Court now turns to determining whether those documents would have been prepared if litigation was not anticipated.

The majority of the disputed documents, in aggregate, support the Court's finding that any one of them would have been prepared even if litigation was never anticipated—the vast number of nearly identical documents prepared in regular intervals, on a weekly or monthly basis, indicates that they were prepared during the normal course of business rather than because

of the prospect of litigation. RBS argues that it "incorporated counsel's advice and mental impressions into various documents," including the risk ratings, charge-off analyses, and other calculations contained in the disputed spreadsheets. (*Id.*) These documents are not protected under the attorney-client privilege, even though RBS suggests that they might be, because they are not communications to or from an attorney, nor is there any indication that they were intended to be confidential. They also are not protected under the work product doctrine. "[S]upporting a claim of privilege requires factual material" to prove the basis of privilege or work product doctrine protection. *Acosta*, 281 F.R.D. at 323-24 (rejecting a corporation's claim of work product doctrine protection over legal-related entries on business spreadsheets when the corporation "submitted no factual material to demonstrate that the allegedly privileged entries from or relating to 'legal' were created and maintained as confidential legal advice"). RBS has provided no factual support indicating how counsel's *legal* advice was sought and incorporated in conducting risk analyses that are a regular part of RBS's normal course of business. *See Heriot*, 257 F.R.D. at 663; *see also Research Inst. for Med. & Chemistry, Inc. v. Wisc. Alumni Research Found.*, 114 F.R.D. 672, 679-80 (W.D. Wisc. 1987) (rejecting the work product claim where the court was unable to determine the basis and the party provided no meaningful explanation of the claim, and stating that "while the burden is, of course, upon the moving party to demonstrate its need to see work product, the burden is upon [the withholding party] in the first instance to demonstrate that a document does in fact contain attorney work product.").

RBS argues that its production of pre-July 2008 spreadsheets support its argument that the post-July 2008 spreadsheets are privileged. (R. 172, Pl.s' Mem. ¶ 16.) On the contrary, the pre-July 2008 spreadsheets prove that the post-July 2008 spreadsheets would have been created regardless of any anticipated litigation. RBS's consistent descriptions that documents with such

titles as "annual review" and "quarter four meeting agenda" were created at the direction of counsel and should be considered attorney work product "is an astonishing claim that contravenes the principles that guide the application of privileges." *MSTG, Inc. v. AT&T Mobility, LLC*, No. 08 C 7411, 2011 WL 221771, at *3 (N.D. Ill. Jan. 20, 2011) (declining claims that routinely-created business plans discussing tasks to be accomplished were "done in anticipation of litigation" or "performed at the direction of legal counsel").

RBS conflates the work product doctrine with the attorney client privilege and effectively claims neither. For example, it argues that the disputed documents "are work product, as they reflect and are based on the mental impressions and advice of counsel." (R. 172, Pl.'s Mem. ¶ 12.) Attorney-client privilege protects confidential communications with and advice of counsel, while the work product doctrine protects litigation preparation efforts taken by counsel or at her direction. Documents that are written by or for attorneys or that include an attorney's legal advice are covered by the attorney-client privilege, and documents that are not prepared by or for attorneys but are created because of litigation fall into the work product doctrine. Documents that were created during the normal course of business and do not contain confidential legal advice are not protected by either the attorney-client privilege or the work product doctrine. Unfortunately for RBS, many of the disputed documents here fall into that category.

The majority of the disputed documents the Court reviewed were business documents without clear legal analysis or input, and RBS's generic description that the documents contained financial analysis "based in part on and reflecting advice of counsel" is insufficient to establish that the work product doctrine attaches. *See, e.g., Acosta*, 281 F.R.D. at 317 (summarizing *Muro v. Target Corp.*, 243 F.R.D. 301, 306 (N.D. Ill. 2007)); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988) ("Cuno has merely stated that the decisions arrived at are based in part on

legal advice, which is not sufficient."); *see also Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000) ("describing a document as 'legal advice' or 'work product' is not the same as *establishing* that the documents are immune from discovery. . . . [S]uch descriptions . . . are insufficient to carry Zurich's burden of establishing attorney-client privilege or work product"). RBS argues that the analysis in the disputed documents "reflect and are based on the mental impressions and advice of counsel." (R. 172, Pl.'s Mem. ¶ 12.) Relying on *Sandra T.E. v. S. Berwyn Sch. Dist.*, 600 F.3d 612, 622 (7th Cir. 2010), RBS argues that because "an attorney's thought processes and mental impressions" are what the work product doctrine is designed to protect, RBS argues that the spreadsheets are privileged. (*Id.*) However, RBS fails to consider that in *Sandra T.E.*, the Seventh Circuit went on to state that "[t]here is a distinction between precautionary documents developed in the ordinary course of business for the remote prospect of litigation and documents prepared because some articulable claim, *likely* to lead to litigation, has arisen. Only documents prepared in the latter circumstances receive work-product protection." *Sandra T.E.*, 600 F.3d at 622 (quoting *Binks*, 709 F.2d at 1120) (internal quotation marks, citation, and alterations omitted).

The case at hand is different than in *Sandra T.E.*, as the documents in question there— such as notes and memoranda related to witness interviews—were "plainly prepared with an eye toward" the pending litigation. *Id.* (internal quotation marks omitted). Without any explanations to accompany the documents or factual proof that the business documents were prepared in anticipation of litigation, the Court does not find spreadsheets consisting of loan risk analyses and financial forecasts—routine business exercises for RBS—to be protected under the work product doctrine. To the extent that the spreadsheets contain factual information about pending lawsuits, they are not privileged because they do not contain legal advice nor were they prepared

specifically in response to or in connection with such litigation. *See, e.g.*, *Hintz*, at \*4 (finding that a section of a meeting agenda entitled "Litigation" contained only "factual information regarding the number of pending lawsuits," not legal advice, and therefore was not protected by the attorney-client privilege).

With regards to the disputed e-mails, RBS notes that many of them are only responsive and privileged by virtue of their attachments. (R. 172, Pl.'s Mem. ¶ 11 n.3.) E-mails can be produced independently of their attachments, and vice versa. *See Muro*, 2006 WL 3422181, at \*5 (stating that attachments are judged separately from their primary documents and that to be withheld, each must individually meet the privilege standard); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 4 (N.D. Ill. 1980) (stating that attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with the attorney). To the extent the e-mails are not themselves privileged (i.e., are not listed below as protected) and are responsive, and to the extent the e-mails are necessary to contextualize the non-privileged responsive attachments, RBS is directed to produce them. If the e-mails are privileged, RBS is directed to describe them on their privilege log in a manner that conforms with Rule 26(b)(5). The Court entrusts RBS with determining whether the e-mails are responsive or not.

Based on the Court's *in camera* inspection of the disputed documents, the following documents are privileged under the work product doctrine: 41, 76, 102, 367, 368, 433, 440, 462a, 514, 517, 518, 530-540, 548, 566, 570, 572, 580-586, 599, 623-630, 632-639, 647-652, 663, 667, 668, 710, 711, 713, 718, 719, 721, 725, 726, 728, 734, 735, 740, 742, 744, 746-749, 769, 770, 774, 775, 778, 779, 781, 782, 799, 812, 815-824, 843, 844, 856-61, 871-873, 875, 902-904, 908-918, 923, 933-937, 952, 953, 955, 957, 958, 962, 963, 966, 967.

### C.    Redacted documents

Defendants argue that RBS improperly redacted certain documents and improperly withheld certain e-mail attachments based on relevance. (R. 169, Defs.' Mot. Compel. ¶¶ 1-5.) RBS contends that it redacted information about other borrowers that is not responsive to Defendants' document requests and has nothing to do with the claims at issue here. (R. 172, Pl.'s Mem. ¶¶ 5-6.) Defendants argue that information pertaining to other Dunkin Donuts franchisees should be produced because it is relevant to their affirmative defenses and counterclaims. ((R. 169, Defs.' Mot. Compel. ¶ 6.) Defendants contend that the redactions make it difficult for Defendants to discern the meaning of certain documents. (*Id.* ¶ 9.) Defendants request that the Court compel RBS to produce responsive documents that are not protected by the attorney-client privilege or the work product doctrine. (*Id.* ¶ 23.)

Within RBS's response, it expresses two concerns: that the information it redacted is confidential, and that it is not responsive to any of Defendants' Interrogatories or Document Requests. (R. 172, Pl.'s Mem. ¶ 2.) RBS contends that it is not required to produce "*completely non-responsive* documents that were attached to otherwise responsive (and produced) e-mails," most of which it claims consist of voluminous spreadsheets containing non-public and sensitive information that have nothing to do with Defendants or their loans. (*Id.* ¶ 6.) RBS argues that Defendants seek documents in their motion to compel that they did not properly seek by serving document requests. (*Id.* ¶¶ 6-8.) RBS further contends that the redaction of non-responsive information is proper. (*Id.* ¶ 9.) Along with its privilege log and privileged documents, RBS provided the Court the produced and unredacted versions of all the documents it redacted. Each party garners several cases to support their propositions that redaction is or is not appropriate. (*See* R. 169, Defs.' Mot. ¶ 10; R. 172, Pl.'s Mem. ¶ 9).

Federal Rule of Civil Procedure 37 provides for motions to compel disclosure or discovery. Specifically, as relevant here, a party may move for an order compelling production if a party fails to respond to document requests made under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). The 1970 Committee Notes emphasize that "Rule 37(a) provides relief to a party seeking discovery against one who, with or without stated objections, fails to afford *the discovery sought*." (emphasis added). Accordingly, the Court does not compel parties to produce documents that were not requested. *See, e.g.*, *Commodity Futures Trading v. Richards*, No. 96C334, 1996 WL 308286, at *6 (N.D. Ill. June 6, 1996) (holding that even potentially relevant documents did not need to be produced if they were not responsive to a party's document request); *Eley v. Herman*, No. 1:04-CV-00416, 2006 WL 276741, at *3 (N.D. Ind. Feb. 2, 2006) ("[defendant] cannot be compelled to produce a document that [plaintiff] did not request"). Defendants did not request any documents related to any RBS customers or loans other than themselves and their loans.[2] Additionally, information about other RBS customers' loans is not relevant to any of the claims at issue here.

Courts frequently restrict discovery based on relevance. *See, e.g.*, *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (upholding district court's limitations on discovery based upon relevance); *Diak v. Dwyer, Costello, & Knox, P.C.*, 33 F.3d 809, 813 (7th Cir. 1994) (upholding district court's denial of request for unredacted tax returns after finding that redacted material was irrelevant to issues at hand). Withholding and redacting documents that are non-responsive to Defendants' document requests is appropriate.

---

[2] Defendants' document production request did request documents related to customers identified in RBS's responses to Defendants' interrogatories 13 and 14. (R. 172-2, Ex. B, Pl.'s Resp. to Defs.' First Req. for Docs. ¶¶ 14, 15.) However, RBS identified no customers in their responses to interrogatories 13 and 14. (R. 172-1, Ex. A, Pl.'s Resp. to Defs.' First Interrogs. ¶¶ 13, 14.)

See, e.g., *Abbott v. Lockheed Martin Corp.*, No. 06–cv–0701, 2009 WL 511866, at *3 (S.D. Ill. Feb. 27, 2009); *Nauman v. Abbott Labs.*, No. 04 C 7199, 1006 WL 1005959, at *8 (N.D. Ill. April 12, 2006) (refusing to order production of documents redacted based on relevance); *Beauchem v. Rockford Prods. Corp.*, No. 01 C 50134, 2002 WL 1870050, at *2 (N.D. Ill. Aug. 13, 2002); *McCurdy v. Wedgewood Capital Mgmt Co.*, No. CIV.A. 97-4304, 1998 WL 961897, at *3 (E.D. Pa. Dec. 31, 1998) (finding that the identities of non-party clients were irrelevant and thus appropriately redacted); *see also Makowski vs. SmithAmundsen LLC*, No. 08 C 6912, 2012 WL 1634832 (N.D. Ill. May 9, 2012) *objections overruled*, 2012 WL 3643909 (N.D. Ill. Aug. 21, 2012) (holding that "non-privileged materials may be withheld if they are not responsive to one of Plaintiff's document requests" and declining to evaluate "the applicability of a privilege claim for a document that Plaintiff never asked for and that is completely irrelevant to the issues in this case."). In *In Re Yasmin And Yaz (Drospirenone) Mktg., Sales Practices And Products Liability Litigation*, plaintiffs' theory of the case was that a certain active ingredient in two hormonal contraceptives caused their injuries. No. 3:09-MD-02100-DRH, 2010 WL 3780798, at *2 (S.D. Ill. Sept. 22, 2010). The court prohibited redaction of information regarding defendants' other drugs that contained the same active ingredient, but allowed redaction of business strategy, marketing and sales information pertaining to defendants' other hormonal contraceptives based on relevance. *Id.* at *3. Similarly here, the Court allows RBS to redact business and financial information related to its other clients.

"Absent extraordinary circumstances, the Court does not conduct *in camera* document reviews to determine relevancy for purposes of discovery." *Stallings v. Union Pac. R. Co.*, No. 01 C 1056, 2003 WL 21317297, at *12 (N.D. Ill. June 6, 2003), *report and recommendation adopted sub nom. Stalling v. Union Pac. R.R. Co.*, No. 01 C 1056, 2003 WL 21688235 (N.D. Ill.

July 17, 2003) (finding that counsel from which discovery was requested could "determine just as easily as the Court whether [the requested] file contain[ed] responsive information."). Consistent with this rule, the Court did not examine each of the 56 withheld and 506 redacted documents and their unredacted versions. Instead, the Court reviewed the documents Defendants specifically complained of in their e-mails to RBS. (R. 169-1, Ex. A, E-mail; R. 169-5, Ex. E, E-mail.) Of the documents the Court has reviewed, it has found no instances of improper redaction of information that is relevant. It has identified one instance of improper withholding, and orders RBS to produce the attachments to RBS 07182. The rest of the redacted and withheld documents the Court reviewed bear out RBS's claim that they redacted confidential information that relates to other borrowers and is not responsive to Defendants' discovery requests or relevant to their claims. However, RBS is ordered to ensure that the redactions do not obscure the context of the produced documents, as described in detail below.

Finally, Defendants seek attorneys' fees and costs pursuant to Rule 37(a)(5). (R. 169, Defs.' Mot. ¶¶ 24-25.) Rule 37(a)(5)(C) instructs that if a motion to compel discovery is granted in part and denied in part, the Court may award reasonable attorneys' fees. When "the dispute over discovery between the parties is genuine, . . . the losing party is substantially justified in carrying the matter to the court" and the award of expenses is not indicated. Fed. R. Civ. P. 37(a) (1970 Committee Notes). The Court finds this to be the case here and declines to award Defendants attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court GRANTS RBS's motion to exclude the testimony of Amjad Kadwani (R. 175) and GRANTS IN PART and DENIES IN PART Defendants' motion to compel document production (R. 169), as outlined in detail above.

RBS's redactions based on relevance are allowed, but they must be limited to information that could have no possible bearing on any of the claims or defenses in this suit and must enable Defendants to understand the context of the redacted documents. For example, the title and description of page one of document RBS 07437 must be produced to provide context and document RBS 07436 must be unredacted except for the names of the two other customers. RBS is ordered to review its redacted documents to ensure that the context is clear and produce documents with less redaction if the produced versions are unintelligible.

The Court ORDERS RBS to produce to Defendants within three business days the disputed as yet unproduced documents that the Court did not find to be protected by attorney-client or work product privilege above. To the extent the documents are non-responsive to Defendants' requests or claims, they may be redacted in conformity with this opinion.

ENTERED: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated: June 4, 2013**

24